Argued and submitted April 11; resubmitted In Banc October 12, affirmed December 28, 1994, petition for review denied May 30, 1995 (321 Or 246)

In the Matter of the Compensation of
Janet K. Jackson, Claimant.

Janet K. JACKSON,
*Petitioner,*

*v.*

TUALITY COMMUNITY HOSPITAL
and SAIF Corporation,
*Respondents.*

(88-13477; CA A80451)

888 P2d 35

Helen T. Dziuba argued the cause and filed the brief for petitioner.

Steven Cotton, Special Assistant Attorney General, argued the cause for respondents. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

DEITS, J.

Riggs, J., concurring in part; dissenting in part.

## DEITS, J.

Claimant seeks reversal of a Workers' Compensation Board order reducing her unscheduled permanent disability award resulting from a low back injury, and refusing to award her additional scheduled permanent disability. We affirm.

Claimant first injured her back in 1983, and then reinjured it in 1984. In May, 1985, her claim was closed, and she was awarded 20 percent unscheduled permanent partial disability and 10 percent scheduled permanent partial disability to the left foot (lower leg). In 1989, claimant experienced increasing low back and leg pain and, consequently, in February 1990, underwent surgery. On October 9, 1990, a Determination Order awarded an additional 4 percent unscheduled permanent partial disability, for a total of 24 percent. In April, 1991, claimant requested reconsideration, disputing the impairment used in rating her disability.

Thereafter, the Department of Insurance and Finance (DIF)[1] scheduled a medical arbitration pursuant to ORS 656.268(7), but claimant refused to attend that examination. The medical arbiter did not issue any findings. On August 23, 1991, DIF issued an order on reconsideration, increasing claimant's total unscheduled award to 29 percent. Claimant then requested a hearing. At the hearing, she offered two reports from her treating physicians that were prepared after the order on reconsideration. The referee ruled that those exhibits were inadmissible under ORS 656.268(7). However, the referee agreed with claimant that DIF''s temporary rules defining standards for rating permanent disabilities were invalid. Without applying the temporary rules, the referee fixed claimant's unscheduled permanent partial disability at 36 percent, but refused to award additional scheduled disability for claimant's left leg.

On claimant's appeal to the Board, it reversed the referee's ruling that the temporary rules were invalid and affirmed the referee's exclusion of the treating physician's reports. The Board applied the temporary rules insofar as they had been incorporated by subsequently promulgated

---

[1] This department is now known as the Department of Consumer and Business Services.

permanent rules,[2] reduced claimant's unscheduled permanent partial disability to 29 percent and agreed with the referee that claimant should not be awarded additional scheduled disability.

On appeal, claimant first assigns error to the Board's conclusion that under ORS 656.268(7), the medical exhibits that were prepared after the order on reconsideration, that claimant sought to introduce at the hearing, must be excluded. ORS 656.268(7) establishes the process to be followed when a claimant requests reconsideration of a determination order disputing the impairment used in rating a disability. The claimant must advise the director of any objections to the impairment decision, and the director is required to appoint a medical arbiter. The arbiter or panel of arbiters may examine the worker and perform such tests as deemed necessary. The arbiter or panel then is to submit findings to the department to be used in the reconsideration of the impairment decision.

■     In deciding whether ORS 656.268(7) requires the exclusion of the exhibits claimant sought to offer, we look first to the text and context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The pertinent language of ORS 656.268(7) provides:

> "The findings of the medical arbiter or panel of medical arbiters shall be submitted to the department for reconsideration of the determination order or notice of closure, and no subsequent medical evidence of the worker's impairment is admissible before the department, the board or the courts for purposes of making findings of impairment on the claim closure."

Claimant argues that "subsequent medical evidence" as used in ORS 656.268(7) refers to evidence generated *after* "the findings of the medical arbiter * * * [are] submitted to the department." She reasons that because no medical arbiter's findings were ever generated here, the bar on submitting "subsequent medical evidence" does not apply.

■■     We conclude that the pertinent text and context of this statute are not clear as to whether the submission of

---

[2] *See* OAR 438-10-010(2) (incorporating by reference temporary rules defining standards for rating disabilities).

findings by the medical arbiter is an absolute prerequisite to the preclusion of subsequent medical evidence. Accordingly, it is necessary to look at the legislative history of the statute. *PGE v. Bureau of Labor and Industries, supra.* It is apparent from the legislative history that the purpose of the reconsideration process created by ORS 656.268(7) was to cut down on the number of appeals and hearings relating to impairment decisions and, consequently, the delay and expense involved in such hearings, by requiring claimants to go through a reconsideration process at the department level. As explained by Representative Shiprack:

> "We are also going to require workers who disagree with the initial disability of evaluation decision to seek a reconsideration. Right now this is voluntary. What this means in lay terms is that once a person gets a determination order from the evaluation section of the department, and they are dissatisfied with the extent of disability award, they would have a mandatory reconsideration of that before they went on to hearing. * * * *This will dramatically cut back the time that is spent in the hearings process.*" Tape Recording; Special Session, House floor debate, May 7, 1990, Tape 2, Side A at 5. (Emphasis supplied.)

■ Under claimant's reading of the statute, however, claimants who refuse to fully participate in the reconsideration process could prolong the appeal process as well as gain a tactical advantage. By refusing to participate in the reconsideration process, a claimant could submit medical reports generated after the reconsideration decision, while those who fully participated in the reconsideration process would be precluded from doing so. That result would frustrate the legislative purpose of promoting the reconsideration process and concomitantly reducing hearings and appeals on impairment decisions. We conclude that the legislative history does not support claimant's reading of the statute.

Claimant also argues that our decision in *Scheller v. Holly House*, 125 Or App 454, 865 P2d 475 (1993), *rev den* 319 Or 36 (1994), compels the result that she advocates. In *Scheller*, we held that where no medical arbiter had been appointed, the statutory exclusion of subsequent medical evidence was not triggered. 125 Or App at 454. However, the distinction between the director's failure to comply with the requirement of ORS 656.268(7) to appoint an arbiter when

there is an objection to the impairment decision, as in *Scheller*, and claimant's refusal to be examined by an appointed arbiter in this case is material and, ultimately, dispositive. In *Scheller*, the director's failure did not allow claimant a full and fair opportunity to complete the reconsideration process. Here, claimant was given a full and fair opportunity to complete the statutory process and to submit all pertinent medical evidence. However, she voluntarily boycotted that process. The Board correctly concluded that the statute does not allow claimant to circumvent the subsequent medical evidence bar of ORS 656.268 by refusing to participate in the medical arbitration.

■       Finally, we are not persuaded by claimant's challenge to the temporary rules. By the time that the order on reconsideration issued in this case, August 23, 1991, the temporary rules had expired and the permanent disability rating rules, which claimant does not challenge, were in effect. *See* OAR 438-10-010(7). To the extent that the Board applied the temporary rules, that application was pursuant to the permanent rules incorporating the temporary rules, and not pursuant to the temporary rules themselves. Consequently, claimant's challenge to the temporary rules is moot. *See Edmundson v. Dept. of Ins. and Finance*, 314 Or 291, 295, 838 P2d 589 (1992); *Ferguson v. U.S. Epperson Underwriting*, 127 Or App 478, 873 P2d 393 (1994).

Affirmed.

**RIGGS, J.,** concurring in part; dissenting in part.

I agree with the majority's disposition of claimant's argument regarding the Board's application of the temporary rules. However, I do not agree with the majority's conclusion that the Board correctly excluded the medical exhibits offered by claimant. Accordingly, I dissent.

ORS 656.268(7), which controls our disposition of this issue, provides:

> "If the basis for objection to a notice of closure or determination order issued under this section is disagreement with the impairment used in rating of the worker's disability, the director shall refer the claim to a medical arbiter appointed by the director. At the request of either of the parties, a panel of three medical arbiters shall be appointed. * * * The

*medical arbiter or panel of medical arbiters may examine the worker and perform such tests as may be reasonable and necessary to establish the worker's impairment. \* \* \* The findings of the medical arbiter or panel of medical arbiters shall be submitted to the department for reconsideration of the determination order or notice of closure, and no subsequent medical evidence of the worker's impairment is admissible before the department, the board or the courts for the purpose of making findings of impairment on the claim closure."* (Emphasis supplied.)

In interpreting a statute, our task is to discern the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610, 859 P2d 1143 (1993). The best evidence of legislative intent is the statute itself. 317 Or at 610-11. I disagree with the majority's conclusion that the language in ORS 656.268(7) is not clear. The plain, ordinary and natural meaning of the emphasized language is that medical evidence, prepared after the findings of a medical arbiter are submitted to DIF on reconsideration, is not admissible in any proceeding. The trigger for the exclusion of medical evidence is the submission of an arbiter's report, not the appointment of an arbiter. Where, as here, no report has been submitted, the exclusion does not operate.

The majority distinguishes *Scheller v. Holly House,* 125 Or App 454, 865 P2d 475 (1993), *rev den* 319 Or 36 (1994), because claimant here "voluntarily boycotted [the] process," *i.e.,* she refused to submit to the arbiter's examination. However, in *Scheller,* the claimant also voluntarily boycotted the process. In *Scheller,* it was the claimant's action in not challenging impairment on reconsideration that led the director not to appoint an arbiter. 125 Or App at 456; *see also* ORS 656.268(2). In both cases, a claimant's unilateral action allows medical evidence prepared after the reconsideration process to be considered by the referee. Any distinction between the two cases is illusory.

My reading of the statute does not allow a claimant to completely circumvent the statutory procedures. The statute only provides that "[t]he medical arbiter or panel of medical arbiters *may* examine the worker." (Emphasis supplied.) The statute does not require an examination by a medical arbiter. If a claimant refuses to cooperate in the examination process, the medical arbiter may nevertheless prepare and submit a

report using the medical evidence already before DIF. That was not done here. Had it been done, my reading of ORS 656.268(7) would potentially result in the proper exclusion of claimant's medical evidence prepared after the findings of the medical arbiter.

The Board erred when it decided that the medical evidence prepared after the appointment of the medical arbiter should be excluded. Because I believe that the majority misreads ORS 656.268(7), I dissent.

Landau and Haselton, JJ., join in this concurring and dissenting opinion.