244 P.3d 793 (2010)
2010 OK CIV APP 138
In the Matter of J.C., a Deprived Child,
The State of Oklahoma, Petitioner/Appellee,
v.
Regina Campbell, Respondent/Appellant.
No. 108,252. Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 3.
Court of Civil Appeals of Oklahoma, Division No. 3.
October 29, 2010.
*794 Joe Dewey, Assistant District Attorney, Oklahoma City, OK, for Petitioner/Appellee.
Jeff Wise, Wise Law Firm, Oklahoma City, OK, for Respondent/Appellant.
BAY MITCHELL, Judge.
¶ 1 Appellant Regina Campbell (Mother) appeals a post-judgment denial of her Motion to Vacate the earlier termination of her parental rights to J.C., the youngest of her three children. The underlying termination order, which is not appealed from, is referred to by the parties as a default judgment because Mother failed to appear for the scheduled trial.[1]
¶ 2 Mother's parental rights were terminated upon findings that, based on clear and convincing evidence, she failed to correct the conditions leading to J.C.'s deprived adjudication pursuant to 10A O.S. Supp.2009 § 1-4-904(B)(5)[2], and that termination was in the child's best interests. The Judgment identifies the conditions she failed to correct as lack of proper parental care and guardianship, and failure to protect the child from sexual abuse.[3]
¶ 3 In her Motion to Vacate, Mother contended that although she was aware of the trial date, she was unable to arrange transportation; she tried unsuccessfully to contact DHS in order to request their assistance; she has a meritorious defense; and that default judgments are not favored. Mother argues on appeal that denying her Motion to Vacate is a violation of due process depriving her of the constitutionally protected liberty interest she has in her parent/child bond. She also alleges violations of statutory rights, that default judgments are not favored, and termination was not shown to be in the best interests of the child.
¶ 4 The record demonstrates Mother had actual notice of the termination proceedings. *795 The Order terminating Mother's parental rights was entered subsequent to Mother's failure to appear for the jury trial set on October 26, 2009 and on her failure to appear at the non-jury hearing the following day. Mother filed a Motion to Vacate[4] with Supporting Brief, wherein she explained the cause of her failure to appear at trial. She claimed she had no means of transportation and that despite attempts to contact her DHS case worker for assistance, she was unable to contact her and/or otherwise arrange transportation to court on the day of trial.
¶ 5 A hearing on Mother's motion was subsequently held, where Mother and the DHS case worker testified. Mother testified that she was disabled, could not walk to the courthouse, and that she had made repeated calls to her DHS case worker to request transportation assistance. Mother argues the repossession of her motorcycle, which she claims was her only means of transportation, constitutes an unavoidable casualty or misfortune, which prevented her from attending the termination trial. She also insists DHS has an affirmative duty to provide transportation to Mother, although she cites no supportive authority. Although Mother appears to have been represented by counsel at all times pertinent, Mother did not contact him regarding her transportation problem because she claims she could not find his number.[5]
¶ 6 Mother's testimony directly conflicts with that of the case worker. The case worker testified she visited Mother at Mother's home twelve days prior to the date of trial on October 14, 2009, at which time Mother, who was working on a truck, told her that her motorcycle had been repossessed. The case worker further testified that she offered Mother transportation assistance, but Mother assured her that the truck would be "up and running." Additionally, the case worker testified she received no call from Mother between the time of her in-home visit on October 14, 2009 and the scheduled trial date of October 26, 2009. Given the conflicting testimony from the parties, it is the province of the trier of fact (here, the trial court) to determine the credibility of witnesses and the effect and weight to give their testimony, and are not questions of law for an appellate Court on appeal. Hagen v. Independent School Dist. No. I-004, 2007 OK 19, ¶ 8, 157 P.3d 738, 740.
¶ 7 We review an order granting a motion to vacate for abuse of discretion. Patel v. OMH Medical Center, Inc., 1999 OK 33, ¶ 20, 987 P.2d 1185, 1194. The test for measuring the legal correctness of such an order is whether the trial court exercised sound discretion upon sufficient cause shown. Schepp v. Hess, 1989 OK 28, ¶ 11, 770 P.2d 34, 39. Abuse occurs if the trial court exercises its discretion to an end or purpose not justified by, and clearly against, reason and evidence, or if it errs with respect to a pure, unmixed question of law. See Patel, ¶ 20, 987 P.2d at 1194; Christian v. Gray, 2003 OK 10, ¶ 43, 65 P.3d 591, 608; Jones, Givens, Gotcher & Bogan, P.C. v. Berger, 2002 OK 31, ¶ 5, 46 P.3d 698, 701.
¶ 8 "Procedural due process mandates that reasonable steps be taken to give a parent prior notice of the proceeding and an opportunity to be heard." Tammie v. Rodriguez, 1977 OK 182, 570 P.2d 332, 334. Additionally, due process requires sufficient notice to the parent of the specific conditions which the law requires to be changed. In re B.M.O., 1992 OK CIV APP 89, 838 P.2d 38. In this case, Mother concedes she had actual and proper notice of the termination proceedings. She was afforded proper notice of the specific conditions which led to the deprived adjudication and the conditions which she was required to correct, which were set out *796 in the court-approved treatment plan.[6] At the termination hearing, the DHS case worker testified that although Mother completed her treatment plan, she failed to demonstrate an ability to protect the child. We discern no procedural due process violation.
¶ 9 We believe Mother's substantive due process argument to be that an order terminating parental rights entered on default is so fundamentally unfair that it amounts to a violation of due process. However, as noted above, this was not a default judgment. Additionally, it should be pointed out Oklahoma law now expressly provides "[t]he failure of a parent who has been served with notice under this section to personally appear at the hearing shall constitute consent to the termination of parental rights by the parent given notice." 10A O.S. Supp. 2009 § 1-4-905(A)(5) (emphasis added). The statute further specifically sets forth such parent's burden of proof on a motion to vacate which is:
... to show that he or she had no actual notice of the hearing, or due to unavoidable casualty or misfortune the parent was prevented from either contacting his or her attorney, if any, or from attending the hearing or trial.
10A O.S. § 1-4-905(B)(3) (emphasis added).
¶ 10 The trial court apparently believed Mother failed to meet her burden of proof that she was prevented from either contacting her attorney or from attending the trial due to unavoidable casualty or misfortune. We agree. A transportation problem, which Mother had knowledge of twelve days in advance of a scheduled court appearance, does not constitute an unavoidable casualty or misfortune within the meaning of the statute. In fact, this mishap was clearly avoidable. Mother had sufficient time and opportunity to make transportation arrangements, which she failed to do. The trial court's denial of the Motion to Vacate was not an abuse of discretion.
¶ 11 Mother finally argues that termination of her parental rights is not in the best interests of the child. It is difficult for this Court to imagine a more appropriate case for the termination of a parent's parental rights than one such as this, where the Mother failed to protect her older two children from sexual abuse from numerous male family members and failed to protect the child involved here from the sexual abuse perpetrated by the child's older sibling (who, for reasons unclear and unimaginable, has been returned to Mother's custody).
¶ 12 Upon our careful review of the record, clear and convincing evidence supports the trial court's determination that Mother failed to correct the conditions which led to the deprived adjudication and that termination of Mother's parental rights was in the best interests of the child. No abuse of discretion is found in the denial of Mother's Motion to Vacate. Accordingly, the Journal Entry Denying the Mother's Motion to Vacate is AFFIRMED. Mother's request for oral argument is denied.
JOPLIN, P.J., and BELL, V.C.J., concur.
NOTES
[1] Trial was scheduled on October 26, 2009. Mother did not appear and the trial judge continued the case to the next day. Mother again failed to appear. An evidentiary hearing was held and Mother's parental rights were ordered terminated. Although the parties refer to the termination order as a default judgment, it was, in fact, a determination on the merits. The transcript of that hearing bears this out. A Journal Entry of Judgment was filed on October 29, 2009 with findings and conclusions. The Journal Entry of Judgment does not refer to itself as a "default judgment." It refers to Mother's status only that she "appears not." It was a not a "default judgment" in the sense of a judgment being entered due to Mother's non-appearance. Rather, judgment was entered following an evidentiary hearing, based on the evidence presented, a review of the court file and arguments of counsel. Mother's non-appearance was noted, but was not the basis for the judgment terminating her parental rights.
[2] Mother contends Title 10, the legislative predecessor to Title 10A, applies to her case because she stipulated to the allegations in the deprivation petition prior to May 21, 2009, which is the effective date of Title 10A. We disagree. Title 10A applies here. The Second Amended Petition to terminate Mother's parental rights to J.C. was filed on June 10, 2009, which is subsequent to the effective date of Title 10A. 10A O.S. Supp. 2009 § 1-4-904(B)(5) provides as follows:

B. The court may terminate the rights of a parent to a child based upon the following legal grounds:
....
5. A finding that:
a. the parent has failed to correct the condition which led to the deprived adjudication of the child, and
b. the parent has been given at least three (3) months to correct the condition.
[3] The June 10, 2009 Second Amended Petition set forth the following conditions which led to the adjudication of the child's deprived status:

That the children do not have the proper parental care and supervision necessary for their physical emotional and mental well-being;
That T.C. has been sexually abused by her father, Timothy Stone; her uncle, Benjamin Schmitt; her aunt's boyfriend, John Salazar; and her step-father, Miguel Reyes;
That K.C. and T.C. have sexually acted out in the past;
That K.C. was abused by his father, Timothy Stone; and his step-father, Miguel Reyes;
That J.C. was sexually abused by K.C.;
That the Mother should have known of T.C.'s sexual abuse and the sexual abuse between the children and failed to protect, despite working services in other states and agreeing to protect her children from possible perpetrators;
Mother's treatment plan was adopted on January 5, 2009. Termination was also sought on the basis of "heinous or shocking" sexual abuse codified at 10A O.S. Supp.2009 § 1-4-904(B)(9).
[4] The Motion to Vacate was filed on December 1, 2009, thirty-three days after the filing of the Journal Entry of Judgment terminating Mother's parental rights. Title 12 O.S.2001 § 1031 and § 1031.1, the statutory authority for the motion to vacate, require the motion be filed within thirty days of the filing of the underlying judgment. This was apparently not raised below.
[5] The record does not disclose why Mother's counsel did not appear in Court on the day of trial or at the default hearing the following day. However, he did appear (along with his client) at the hearing on Mother's Motion to Vacate.
[6] The treatment plan was not included in the appellate record.