Carl H. ABEL, Jr., Plaintiff in Error,

v.

**OKLAHOMA REAL ESTATE COMMIS-
SION, Defendant in Error.**

No. 42620.

Supreme Court of Oklahoma.

April 15, 1969.

Blackstock & Joyce, by LeRoy Black-stock, and Dwayne C. Pollard, Tulsa, for plaintiff in error.

Gable, Gotwals, Hays, Rubin & Fox, Tulsa, for defendant in error.

WILLIAMS, Justice.

This is an appeal from a judgment of the district court suspending the real estate

broker's license of plaintiff in error, petitioner below, for violations of this State's Real Estate License Act, 59 O.S.1961, § 831 et seq. The judgment of the trial court was rendered on an appeal, wherein the issues were tried de novo, from a decision of the Oklahoma Real Estate Commission, respondent below and defendant in error herein, also suspending the license of plaintiff in error. The parties will be referred to herein as they appeared in the district court.

The initial proceedings against petitioner apparently were begun by the Real Estate Commission on its own motion. At the conclusion of these proceedings, the Commission found that petitioner, while acting in his capacity as a real estate broker, had participated in the sale between Frank Neely, seller, and John D. and Nelda J. Tackett, purchasers, of a residence located in Tulsa County; that petitioner had prepared, and signed as the real estate broker, a "Receipt and Contract of Sale" which reflected the agreed sale price of the residence to be $26,600, and the earnest money paid by purchasers to be $3,000; that in fact, as petitioner knew, the actual purchase price of the residence agreed to by seller and purchasers was $24,500, and the earnest money paid was $1,000; that defendant knew "* * * that the purpose or effect of such contract could or might be the inducement of a lender to loan an amount greater than it would ordinarily loan had the true purchase price and earnest money been reflected" in the contract; and, that a lender had in fact made a loan on the residence in excess of what it would have loaned had the actual purchase price and earnest money paid been stated in the contract.

From the above findings, the Commission concluded that the conduct of petitioner constituted a substantial misrepresentation in the conduct of his business within the meaning of § 850(b) of the Real Estate License Act, supra; constituted untrustworthy, improper, fraudulent and dishonest dealings within the meaning of § 850(h) of the Act; and, demonstrated petitioner's un-worthiness to act as a broker within the meaning of § 850(o) of the Act.

Based upon these findings and conclusions, the Commission ordered the suspension of petitioner's real estate broker's license for a period of six months. Thereafter, petitioner filed his petition in the district court seeking a review, by trial de novo pursuant to the provisions of § 851(b) of the Real Estate License Act, of the Commission's order.

At the trial in the district court, John D. Tackett, one of the purchasers of the residence, testified that he entered into negotiations with petitioners concerning the purchase of the residence. These negotiations culminated in an agreement for the Tacketts to purchase the residence for the sum of $24,500, with $1,000 to be paid into escrow at the time a sales contract was executed. Accordingly, a sales contract was prepared and the Tacketts met with petitioner and the seller, Mr. Neely, to execute the contract. This contract was contingent upon the Tacketts' obtaining a loan in the amount of $23,100. Mr. Tackett stated that at the time of the meeting with petitioner and the seller he noticed that the purchase price was stated as $26,500, rather than the agreed upon $24,500, and that the contract reflected receipt from the purchasers of the sum of $3,000, as an escrow payment. When he questioned petitioner about this apparent discrepancy, petitioner answered, according to Tackett, that the builder preferred to have the sales contract reflect the appraised value of the property and not the purchase price thereof. The Tacketts then executed this contract but it is clear from the evidence that the actual purchase price was $24,500 and that only $1,000 was paid into escrow at the time the contract was executed.

Mr. Tackett further testified that after the sales contract was executed, he and his wife returned to Chicago, where they were then living, and that all other necessary negotiations concerning the sale and the obtaining of a loan were handled through correspondence with petitioner. The Tack-

etts' application subsequently was approved by a Tulsa lending institution for a loan in the amount of $23,100, and the entire transaction was closed.

Sometime after the above sale was consummated, a controversy between the Tacketts and the seller and builder of the residence, Mr. Neely, arose concerning certain defects in the construction of the residence. This controversy resulted in litigation during which the Tacketts' lender discovered that the actual sale price had been $24,500. This lender then informed the Tacketts that the original loan of $23,100 was in an amount greater than that allowed by its regulations and required them to pay an additional sum on the principal to rectify the situation. Concerning this original loan, an officer of the lender testified that although the residence had been appraised at an amount°higher than $24,-500, if a sale were involved, the loan on this particular residence was required to be based upon the actual sales price and not the appraised value. He also stated that the loan to the Tacketts in the amount of $23,100 was based upon what the lender believed to be the sales price, i. e., $26,500 as stated in the sales contract.

On his own behalf, petitioner testified that he did prepare the sales contract showing the higher than actual sales price, but stated that he did this on the suggestion of Mr. Neely. Petitioner also stated that Mr. Neely had arranged for the loan to the Tacketts and that he (petitioner) had been assured by Mr. Neely that the lender approved of the procedure used in the sales contract, which, in effect, increased the maximum amount it would loan on the sale.

Petitioner also implied that the sales price was actually $26,500 and that the additional sum of $2,000 was to be paid by the Tacketts making some arrangement with Mr. Neely. However, Neely testified that the actual sales price was $24,500 and Tackett denied that he had an agreement to pay Neely any sums other than the purchase price of $24,500.

At the conclusion of the trial, the court below entered findings similar to those above referred to of the Real Estate Commission, and, as did the Commission concluded that petitioner had violated subsections (b), (h) and (o) of § 850, Real Estate License Act. However, the trial court suspended petitioner's license for a period of four months rather than for six months as ordered by the Commission.

On appeal, petitioner contends that the proceedings before the Real Estate Commission and the trial court were void as he never received, as required by § 851(a) of the Real Estate License Act and Regulation No. 851–1 issued thereunder by the Real Estate Commission, a bill of particulars setting forth the facts constituting his alleged violations of the Act. He admits to having notice that he had been charged with violating subsection (b), (h) and (o) of § 850 of the Act, and to having notice of the time and place of the hearing before the Commission, but he argues that he was denied due process by the Commission's alleged failure to serve him with the required bill of particulars.

As noted above, petitioner herein sought review by trial de novo in the district court, as provided by § 851(b) of the Act, of the order of suspension entered by the Commission. Petitioner does not suggest that he did not receive a full and fair judicial hearing in that appeal. Even if we were to assume that the Commission did not serve petitioner with a written bill of particulars, it is our opinion that the trial de novo in the district court remedied any irregularities or alleged denial of due process before the Commission. See Commonwealth v. Cronin, 336 Pa. 469, 9 A.2d 408, 125 A.L.R. 1455, and Cooper v. State Board of Medical Examiners, 35 Cal.2d 242, 217 P.2d 630, 18 A.L.R.2d 593.

The district court's scope of review below was unlimited and it was authorized by § 851(b) of the Act to enter such order with respect to the issues as it deemed just and equitable and to grant such relief as

the circumstances required. It is clear from the record ,herein that petitioner in the appeal to the district court was aware of the facts alleged to constitute violations of the Real Estate License Act and had full opportunity to present every available defense against the suspension of his broker's license. In our opinion, petitioner had his day in court.

■ Petitioner also contends herein that the evidence below does not warrant the penalty imposed by the trial court. We have reviewed the record before us and in our opinion it contains sufficient competent evidence to support the judgment suspending petitioner's broker's license for a period of four months.

■ The Administrative Procedures Act, 75 O.S.1968 Supp., § 301 et seq., which by its provisions apparently applied to proceedings before the Real Estate Commission, states, in § 318(1) thereof:

"Any person or party aggrieved or adversely affected by a final order in an individual proceeding * * * is entitled to certain, speedy, adequate and complete judicial review thereof under this Act, but nothing in this Section shall prevent resort to other means of review, redress, relief or trial de novo, *available because of constitutional provisions.*" (Emphasis added.)

Section 321 of the Administrative Procedures Act provides that judicial review of an agency proceeding shall be confined to the record made therein.

The parties herein have not raised, nor have they briefed, the question of whether the judicial review as provided in the Administrative Procedures Act now provides the exclusive means of reviewing proceedings before the Oklahoma Real Estate Commission. For this reason, we are not deciding that question herein. However, we note that if we were to hold that the Administrative Procedures Act provides the exclusive means of review, the result,

as it is herein, would be the suspension of petitioner's license.

The judgment of the trial court is affirmed.

All of the Justices concur.