2007 OK 19

**Jerry HAGEN, Plaintiff/Appellee,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. I–004, of Adair County, a/k/a Watts Public Schools, Defendant/Appellant.**

No. 102,482.

Supreme Court of Oklahoma.

April 3, 2007.

Matthew P. Cryan, Jana R. Burk, and Jerry A. Richardson, Rosenstein, Fist & Ringold, Tulsa, OK, for Appellant.

Richard O'Carroll, Sharisse O'Carrol, O'Carroll & O'Carroll, Tulsa, OK, for Appellee.

HARGRAVE, J.

¶ 1 This is appellant/school district's appeal from the trial judge's order reinstating career teacher Jerry Hagan.[1] Appellant's board of education terminated Hagan under 70 O.S.2001 § 6–101.22(A)(3)[2] of the Teacher Due Process Act, for alleged "physical or mental abuse of a child." Hagan demanded a trial de novo in district court and sought reinstatement with full back pay and benefits as well as expungement of his personnel file, plus attorney fees and costs. After trial de novo, the trial judge ruled that school district failed to prove by a preponderance of the evidence that Hagan violated § 6–101.22(A)(3) of the Teacher Due Process Act. The trial judge ordered Hagan reinstated with back pay and awarded him attorney fees. The only question before the Court is whether the trial court's ruling is supported by competent evidence. We find that it is and affirm the trial court.

**TEACHER DUE PROCESS ACT OF 1990**

¶ 2 The Teacher Due Process Act of 1990, 70 O.S.2001 § 6–101.20 et. seq. provides that if a school board, after the procedure set out therein, dismisses a career teacher, it must notify the teacher of the right to petition for a trial de novo in the district court of the county where the school district is located. 70 O.S.2001 § 6–101.26(C). The Act places the burden on the district superintendent or designee to prove by a preponderance of the evidence that dismissal is warranted. Section 6–101.27(D).

¶ 3 The Act provides that trial judge shall give no deference to the school board's findings, but instead shall determine de novo all issues of fact and law necessary for the full adjudication of the dispute at the trial. Id. Unless otherwise specifically provided, the law generally applicable to civil suits filed in district court shall apply to the proceedings for trial de novo under the section and the trial shall proceed as a non-jury trial before the court. *Id.*

¶ 4 At the conclusion of the trial, the judge must prepare written findings of fact and conclusions of law and enter judgment directing either: 1) that the local board of education reinstate the career teacher with full employment status and benefits; or 2) that the decision of the local board of education for the dismissal of the career teacher be sustained. 70 O.S.2001 § 6–101.27(D).

¶ 5 "De novo review" in the trial court means that there must be a complete examination of all issues, both of fact and law, and the cause stands as if it has never been resolved. The burden of proof does not shift, but rests on the same party as in the lower tribunal. *Bankoff v. Board of Adjustment,* 1994 OK 58, 875 P.2d 1138, 1143–1144. The district court's scope of review is unlimited. *Abel v. Oklahoma Real Estate Commission,* 453 P.2d 1007, 1009.

¶ 6 If no appeal is taken, the decision of the district court is final and binding upon

---

1. Plaintiff's brief informs us that the plaintiff's name is spelled Hagan instead of Hagen. A career teacher means "a teacher who has completed three or more consecutive complete school years in such capacity in one school district under a written teaching contract." 70 O.S.2001 § 6–101.3(4).

2. The current version of the statute is codified at 70 O.S. Supp.2006 § 10–101.22.

the teacher and the board of education. A losing party can appeal the decision in the manner provided by law for the appeal of civil cases from the district court. 70 O.S. § 6–101.27(F).

## STANDARD OF REVIEW ON APPEAL

■ ¶7 In a non-jury trial the trial judge acts as the trier of fact and those findings are entitled to the same weight and consideration that would be given to a jury's verdict. *Soldan v. Stone Video,* 1999 OK 66 ¶6, 988 P.2d 1268, 1269. In an action at law the findings of fact by the trial court have the same force and effect as the verdict of a jury, and those findings will not be disturbed upon appeal where there is any evidence reasonably tending to support the findings. *Robert L. Wheeler, Inc. v. Scott,* 1991 OK 95, 818 P.2d 475, 480. Thus, on appeal, we must accept the findings of fact made by the trier of fact if those findings are supported by competent evidence.

■ ¶8 Likewise, the credibility of witnesses and the effect and weight to be given to their testimony are questions of fact to be determined by the trier of fact, whether court or jury, and are not questions of law for the Supreme Court on appeal. *Robert L. Wheeler, Inc. v. Scott,* 1991 OK 95, 818 P.2d 475, 480; *Loftis v. Collins,* 1966 OK 94, 415 P.2d 927. *See also, Andrews v. Independent Sch. Dist. No. 57,* 2000 OK CIV APP 103, 12 P.3d 491 (trial de novo sought by dismissed teacher is not a review of the administrative procedure, and therefore the trial court's findings of fact are treated as if it were a law action tried to the court and given great deference).

■ ¶9 The teacher in this case was dismissed for violation of 70 O.S.2001 § 6–101.22(A)(3):

A. Subject to the provisions of the Teacher Due Process Act of 1990, a career teacher may be dismissed or not re-employed for:

\* \* \*

3. Mental or physical abuse to a child;

\* \* \*

"Mental or physical abuse to a child" is not defined in the Act.

¶10 Jerry Hagan was a special education teacher at Watts Public Schools. K.H. was a sixth-grade special education student at Watts School and was a pupil of Hagan's. An incident occurred at the school on October 19, 2004 that resulted in Hagan slapping K.H. on the cheek twice. The findings made by the trial judge in the order of reinstatement were:

—Jerry Hagan was a career teacher who had been employed for ten years by the Watts School District and had good evaluations from the administration from 1998 until October 19, 2004. His record was otherwise unremarkable.

—School District was alleging that Hagen committed an act of physical and/or mental abuse of a child pursuant to 70 O.S. § 6–101.22(3) which provides that a career teacher may be dismissed or not re-employed for acts of physical or mental abuse of a child.

—that abuse is harm or threatened harm to a child's health, safety or welfare by a person responsible for same. 10 O.S. § 7102(B)(1). However, a teacher may use ordinary force as discipline, including, but not limited to, switching, spanking or paddling. 21 O.S. § 844.

—that on October 19, 2004 Hagan slapped K.H. two times after K.H. left the classroom without permission. There was a concern that K.H. may have left the school grounds as he had done in the past.

—Gerrie Denton, a teacher in a neighboring classroom, testified that she observed no physical injury and that K.H. often was a discipline problem. She testified that K.H. had problems with other students, had a very quick temper and could be very explosive.

—The elementary school secretary, Janice Noblin, testified that the two slaps were not very hard and that there was no physical injury. She also testified that K.H. had presented discipline problems, that K.H. was often a disciplinary problem for the school and was "getting out of control."

—The high school principal Martin Bradford testified that K.H. had a very short temper, would often get angry over small things and would clench his fists as if he were going to strike you.

—K.H.'s brother, who is K.H.'s guardian, testified that he was fully apprised of the facts and circumstances and had discussed the event with K.H. The brother believed this to be an isolated event and he bore Hagan no grudge. He felt that Hagan should not be fired and would be satisfied if Hagan were K.H.'s teacher again.

—K.H.'s grandmother and caretaker testified that she was fully apprised of all of the events and that she had fully discussed the matter with K.H. She did not want Hagan terminated and would be satisfied if Hagan taught K.H. again. The grandmother testified that she has also slapped K.H. on occasion "to stop him from throwing fits."

—Doctor Jimmie Taylor, M.D., testified that he has known Hagan for 18 years and that this event was out of character for Hagan. He stated that he had a full history from both Hagan and K.H. and that Hagan was being counseled for this event. He testified that in his opinion the event was isolated and that, with the intervention and Hagan's remorseful attitude, would be unlikely ever to be repeated.

—Jerry Hagan testified that his intention was not to harm but to control K.H. He testified that he was remorseful, that the event would not be repeated and that his counseling by Dr. Taylor and others was working.

—Roy Teague, a friend and co-worker, testified that he has known Hagan for approximately ten years through the church, as a teacher and as a coach at school. He testified that Hagan has a reputation for honesty, truthfulness and is a peaceful man who loves children.

¶ 11 The trial judge also took into account his own observation of K.H. in the courtroom throughout the trial. Specifically, he observation that when K.H. was in the courtroom looking at the court reporter's machine, he was very near to Hagan and exhibited no fear or concerns and was totally at ease while in close proximity to Hagan. The trial judge

likewise took into account that Hagan immediately reported the event, did not deny that he had slapped K.H., was honest and straightforward in reporting the events, expressed remorse and apologized to all concerned. He noted that an otherwise unblemished record supported Hagan. Order, ¶¶ 18, 19.

¶ 12 The trial judge concluded that given all of the facts and circumstances, including Hagan's testimony that he was not trying to harm the child, but rather trying to get the child to stop a fit, and including the superintendent's admission that even after a complete investigation she was still undecided whether to dismiss Hagan, the school district had not met its burden of proof.

¶ 13 We have reviewed the evidence and we find that the trial judge's ruling was supported by competent evidence. The evidence was conflicting and the trial judge, who was able to observe the witnesses and weigh the evidence, accorded more weight to the evidence favorable to Hagan. Whether this Court or any other court might have reached a different conclusion based on the same evidence is immaterial.

¶ 14 It is not necessary to recite the evidence in great detail. Mr. Hagan testified that he had accused K.H. of typing the word "jackass" on his computer, which K.H. denied. Hagan testified that he was working with some of the other kids after this happened and one of the kids told him that K.H. had left the classroom. K.H. was permitted to leave the classroom *if he asked permission to do so*, but he did not ask permission. Hagan testified that he went to look for K.H., stating, "The first place I looked was down the street because he's left the school grounds before, then I went toward the office and he was already there in the office." Hagan testified that he did not intend to injure K.H. when he slapped him, but that his intention was to try to get K.H.'s attention and find out what was wrong. Hagan testified that he later went to K.H.'s home and apologized to K.H., his grandmother and brother.

¶ 15 Special Education teacher Gerrie Denton testified that K.H. has specific disabilities and social interaction problems, stating

"[h]e's on medication and he has problems getting along with others, understanding how other kids—he gets mad very easily." She testified that factors taken into account when dealing with K.H. included trying to keep him calm when he is upset and letting him sit by himself for a while or letting him go talk to the principal. Denton and Mr. Hagan had a classroom in the same building with a partition between the rooms. She heard a commotion in Mr. Hagan's classroom and she heard the door slam and heard Mr. Singletterry come in and she assumed it was to watch Mr. Hagan's class. She testified: "I knew that K.H. had gone out the door when the door slammed." Denton did not see the altercation, but testified that Mr. Hagan said that K.H. got in his face and started mouthing him and that he slapped him twice.

¶ 16 Janice Noblin, Watts Public Schools elementary school secretary, testified that K.H. came through the door with Mr. Hagan following him. K.H. was mad and had headed for the office; Hagan was apparently trying to stop him. She testified that K.H. had started toward the office and Mr. Hagan was behind him and that both of them were very upset. She testified that "as they got through the door they had a verbal ... well there was language used by K.H. toward Mr. Hagan and Mr. Hagan wanted me to call the grandmother; he needed some help with K.H." She testified that Hagan physically got hold of K.H. and took him into the office lounge/workroom and that he physically put K.H. down in a chair. She testified, "K.H. was really getting kind of out of control." When asked to describe how she knew that K.H. was upset when he came into the office, she testified that his eyes were twitching, that he was backing up toward the outer wall in the hallway and that Mr. Hagan was right behind him every step. She said that they turned and came back towards her office and that was when Mr. Hagan slapped K.H., testifying, "He slapped K.H. on his right cheek, just the once, maybe twice, but it wasn't really hard."

¶ 17 The testimony of K.H.'s grandmother and brother is as recited in the trial judge's order. They both bore Hagan no ill-will and would be comfortable having Hagan teach K.H. again. The grandmother, who is K.H.'s caregiver, testified that she has had occasion to slap K.H. and that she felt it was appropriate.[3]

¶ 18 School district argues that the evidence shows that Hagan began pushing K.H. through the front doors of the elementary building, that he was yelling at K.H. and using his body to push K.H. and pin him in front of the secretary's window, at which time he slapped K.H. twice on his left cheek, leaving it reddened. School district argues that the trial court's rulings are clearly erroneous, contrary to the weight of the evidence and erroneous as a matter of law.

¶ 19 A teacher has the same rights as a parent or guardian to control and discipline a child attending a public school, according to local policies. 70 O.S. Supp.2006 § 24–100.4(A). The trial judge took into account that the law provides that a teacher may use ordinary force as discipline, including but not limited to, switching, spanking or paddling. 21 O.S. § 844. What constitutes ordinary force would be a jury question. Here, the trial judge was performing the jury's fact-finding function and, in considering all of the evidence, ruled that the school district had not met its burden to show that dismissal was warranted on the statutory ground of physical or mental abuse of a child.

¶ 20 School district argues that the trial court's ruling wrongly required them to prove a specific intent by the teacher to harm the child. The trial court, however, merely determined that school district failed to prove that the teacher's actions constituted "physical or mental abuse of a child" within the meaning of the Teacher Protection Act. The legislature could have, but did not, de-

---

3. K.H.'s grandmother testified:
   Q: Have you ever had occasion to slap K.H. yourself?
   A. "Yes, I have."
   Q: Did you feel at the time, did you feel that it was appropriate?
   A: Yes.
   Q: Why?
   A: "Because he was having one of his little temper tantrums, as I call them—and screaming and hollering. That's the only way I could get him to hush." Tr. p. 111.

fine "mental or physical abuse of a child" in the Act. The statute uses the permissive "may" with regard to dismissal, which implies that even if the school board finds physical or mental abuse of a child, it may or may not dismiss the teacher, at its discretion. The legislature has, however, in giving a dismissed teacher the right to a trial de novo, placed the final discretion with the trial judge, based on the evidence.

¶ 21 Having reviewed the evidence in light of our review standard, we find that the trial judge's decision was based on competent evidence. The trial judge made detailed findings, recapping the evidence before him. The trial judge heard testimony from at least nine witnesses and reviewed the evidentiary materials. The trial judge gave more weight and credibility to the testimony of Hagan and his witnesses. Giving weight and credibility to the evidence before him is one of the trial judge's duties when sitting as the trier of fact. Under these circumstances, this Court, in reviewing the decision of the trial judge, must accept those findings just as we would accept the findings of a jury. The trial judge's ruling was supported by competent evidence and must therefore be affirmed.

## ATTORNEY FEES

¶ 22 The trial judge awarded Hagan his attorney fees. Title 70 O.S.2001 § 6–101.27(D) provides that the trial court may enter an order awarding the prevailing party attorneys fees and costs. School District argues that to award attorney fees was abuse of discretion on the part of the trial judge because Hagan was not impaired financially after his dismissal since he was paid during the pendency of the trial. School District refers to this as a "paid vacation" and a windfall.

¶ 23 The Teacher Due Process Act provides that the teacher shall continue to be paid until the trial de novo is completed. 70 O.S. § 6–101.26(C). The very next section allows for the award of attorney fees to the prevailing party. This indicates legislative intent that a teacher can be awarded both. Hence, we cannot say that the trial court abused his discretion by allowing it.

## AFFIRMED.

¶ 24 CONCUR: WINCHESTER, C.J., EDMONDSON, V.C.J., LAVENDER, HARGRAVE, OPALA, WATT, COLBERT, JJ.

¶ 25 DISSENT: KAUGER, TAYLOR (BY SEPARATE WRITING), JJ.

TAYLOR, J. dissenting.

¶ 1 I respectfully dissent for three reasons. First, the district court's finding that the school district board failed to prove that this special education teacher, Jerry Hagen, plaintiff/appellee, inflicted mental and physical abuse on a child is clearly erroneous. Second, the district court's and this Court's injection of a specific intent to harm requirement into the definition of child abuse in the Oklahoma Child Abuse Reporting and Prevention Act [1] is contrary to the plain terms of the Act and inconsistent with the criminal assault and battery statutes.[2] Third, this Court's construction of provisions in the Teacher Due Process Act [3] as placing in the district courts the final discretionary authority to fire a career teacher is contrary to the plain terms of the Act.

## I. The Evidence

¶ 2 This case is about an assault and battery upon a sixth-grade special education student by that student's teacher. The bottom line is that a career special education teacher, who had full knowledge of his student's mental and emotional challenges, confronted his student and eventually slapped the student on the face twice. No matter what kind of shine or polish this Court, the district court, or the teacher wants to put on these ugly facts, the evidence does not support any conclusion other than this conduct clearly warranted the dismissal of this teach-

---

1. 10 O.S.2001, §§ 7101 *et seq.*

2. *See* 21 O.S.2001, §§ 641, 642.

3. 70 O.S.2001, §§ 6–101.22(A) (enumerates the grounds for which a career teacher may be dismissed and 6–101.27(D) (provides for a trial de novo on the factual and legal issues raised in school district dismissal of a career teacher)).

er. The district court should have sustained the school district board's dismissal.

¶ 3 The evidence clearly established that this teacher, as well as other teachers and administrators at the school, well knew that this emotionally and mentally challenged child was particularly sensitive to confrontation and had been instructed to go the principal's office to cool down when he became upset. This is exactly what the child did when this teacher confronted him. The evidence also clearly established this teacher's conduct was abusive and the abuse was the basis for the teacher's dismissal.

¶ 4 The teacher admitted that the following facts occurred at school on October 19, 2004. The teacher accused this child of typing the word "jackass" on his computer monitor, and the child denied it. The teacher argued with the child over who typed the word, and the child left the classroom. The teacher went to look for the child and located him in the hallway going to the elementary building. The teacher confronted the child, and they were exchanging words as they entered the elementary building. The teacher followed the child and yelled at the child: "You want me to lose my job? I don't care if I lose my job." The teacher forcefully backed the child down the hallway, bodily slammed him, pinned him against the wall, and verbally berated him. The teacher said to the child, "If you slap me, I will slap you," and slapped the child on the face twice, leaving red marks. The teacher then physically moved the child into the elementary school office and put him into a chair. The child was very upset, red-faced, trembling, twitching, and screaming at the teacher, but at no time did the child take any physical action against the teacher.

¶ 5 The teacher testified that at the time of this incident, he was angry over unrelated issues with the school superintendent and referred to the incident with the child as "the straw that broke the camel's back." The incident occurred around 11:00 a.m. The elementary school secretary witnessed the confrontation that took place in the hallway and office in the elementary building. She testified that it lasted about thirty minutes. During the incident, the secretary telephoned the child's grandmother at the request of the teacher. She also telephoned the child's brother and the high school principal. When the high school principal arrived from the building across the street, the child was sitting in the chair and the teacher was standing over the child. The high school principal began to calm the child. The child asked to see the superintendent. The secretary telephoned the superintendent. The teacher refused to go to the superintendent's office and left the school grounds.

¶ 6 The principal and the secretary testified that this confrontation by the teacher made the child more upset than ever. The teacher did not dispute the testimony of either the principal or the secretary. When asked, the teacher agreed that the secretary's testimony was truthful. Neither the teacher nor any other witness testified that the teacher was disciplining this child. Rather, the teacher testified that he was angry with the superintendent.

¶ 7 The school district brought forth four witnesses in addition to the teacher: 1) another special education teacher with 22 years teaching experience who testified about the individualized education program and special instructions for this child; 2) the secretary who witnessed the incident in the elementary building hallway and office; 3) the high school principal with 28 years teaching experience who testified about calming the child and taking him to the superintendent; and 4) the superintendent who testified about her investigation and recommendation. The special education teacher, the principal, and the superintendent, each one, testified that there is never a situation where it would be appropriate for a teacher to slap a student on the face.

¶ 8 The teacher brought forth four witnesses besides himself: 1) his personal physician, 2) a local resident, 3) the child's grandmother, and 4) the child's brother. The physician testified about the teacher's stress and his seeking help after this incident. The physician testified that he was counseling with the teacher and that the teacher also had a counselor in Talequah to help with his stress issues. The physician further testified that this slapping of a child

was "inappropriate" and that he could not guarantee that this teacher would not slap another child. The local resident testified that he had known the teacher for ten years, the teacher coached his boys, and he would approve of his boys being taught by this teacher. The child's grandmother and brother both testified that they would have no problem with the child returning to this teacher's classroom. None of the teacher's witnesses contradicted any of the testimony of the evidence presented by the school district.

¶ 9 The record also contains documentary evidence, including several of this teacher's statutorily-required evaluations. *See* 70 O.S. 2001, § 6–101.10. The evaluations for 1999 to 2003 rated his performance as satisfactory. The February of 2004 evaluation rated his performance as in need of improvement in multiple areas—plans for delivery of lessons, interrelating lesson topics, teaching objectives, interrelating directions with learning objectives, identifying grading criteria, and demonstrating students' mastery of tasks. It rated his lesson plans and his communication of instructional objectives as unsatisfactory. In this regard, the district court's finding that the teacher's record was unremarkable and this Court's observation that his record was unblemished are not supported by the evidence.

¶ 10 At the close of the evidentiary stage of the trial de novo, the district court judge apparently made no independent findings of fact or conclusions of law. Rather, the trial judge adopted, on a wholesale basis, the teacher's proposed findings of fact and conclusions of law. In adopting the teacher's proposed findings, the trial judge completely ignored the school district's allegation of mental and physical abuse of this emotionally fragile child. The trial judge made no findings or conclusions that properly disposed of the mental and physical abuse allegations.

¶ 11 The trial judge made findings regarding his courtroom observations, upon which this Court relies. According to the findings, the trial judge observed that this child did not exhibit concern or fear when in proximity to this teacher in the courtroom. These findings were lifted almost verbatim from the teacher's proposed findings of fact and conclusions of law. These personal observation findings are particularly troublesome because there is nothing in the record that indicates that the child ever appeared at the trial.

¶ 12 The trial judge erred in finding as a fact "the Superintendent's admission that, even after a complete investigation, she was undecided as to whether to dismiss Mr. Hagen." This finding is at best irrelevant and at worst intentionally erroneous in that it completely misrepresents the superintendent's testimony. The record shows that the superintendent said that "my open mind was extended to him to give his side of the story." The evidence is clear that the superintendent found the conduct by the teacher to be wrong, warranting immediate suspension and ultimately dismissal. The superintendent did not testify that she was undecided. Again, this is another finding lifted from the teacher's proposed finding of facts.

¶ 13 The trial judge's conclusion that "a teacher may use ordinary force as discipline, including, but not limited to, switching, spanking or paddling. Okla. Stat. tit[.] 21 § 844" has absolutely nothing to do with the facts presented to the court. The teacher was not disciplining the child; the teacher reacted abusively to his special education student out of anger at the superintendent. Slapping a child on the face is not ordinary force as discipline; every educator witness at the trial testified that slapping a student is never appropriate. Plus, a switching, spanking or paddling is much different than slapping. Slapping, as here, is typically done in a fit of anger. Whereas switching, spanking or paddling when done in a school setting is typically done with a solicited witness and in a controlled, methodical fashion. Also, switching, spanking, and paddling may constitute abuse if administered on an emotionally and mentally fragile child or in an abusive manner.[4]

---

4. Neither can the teacher find impunity in the criminal assault and battery statutes. 21 O.S. 2001, §§ 641, 642, 643, 650.7. Section 650.7(B) makes it a misdemeanor for anyone to commit an assault or battery upon a student during a school activity or during a time when the student

¶ 14 There is no evidence that excuses or mitigates the assault and battery that this child suffered at the hands of this teacher. There is no evidence that supports the district court's failure to sustain the school district board's decision to dismiss the teacher and protect the school students. Under the district court's order and this Court's opinion, a teacher who slaps a student in any manner and as many times as the teacher wishes but without a specific intent to harm the student may not be dismissed for such conduct.

¶ 15 Sadly, this child is left not only without the support of his special education teacher but also without the support of his own family. His own grandmother, who referred to herself as the child's "care-keeper," freely admitted that she also slaps this child when he has his "little temper tantrums." She went on to explain, "That's the only way I could get him to hush." The district court relied on this slapping by the grandmother as if it somehow justifies or mitigates this teacher's conduct. It does not.

¶ 16 We are sending this child back to the classroom with this teacher who slapped him and then home to his "care-keeper" who slaps him to "hush" him. A good question might be: "Why wasn't the Department of Human Services called to investigate the home of this child?"

¶ 17 Having carefully reviewed the evidence, an overwhelming part of which supports the dismissal of the teacher, I must disassociate myself with all of this. The law

and the evidence of this case demands that the school district board's dismissal be sustained and that this child be protected. There is no competent evidence to support the order of the district court. This emotionally and mentally challenged child was slapped in the face by his special education teacher. That is wrong and should never be condoned by the law or any court.

## II. Definition of Child Abuse

¶ 18 According to this Court's opinion, the "only question before the Court is whether the trial court's ruling is supported by competent evidence." I disagree. The trial de novo proceeding below, by statute, involved the question of whether the school district board's dismissal for mental or physical abuse to a child was warranted. This question raises issues not only about the sufficiency of the evidence but also about the meaning of "mental or physical abuse to a child" as a ground for dismissal in 70 O.S.2001, § 6–101.22(A).[5] Although this Court observes that " '[m]ental or physical abuse to a child' is not defined in the Act [Teacher Due Process Act]," the opinion does not attempt to define the phrase.

¶ 19 The school district urged that we retain this appeal to address first impression questions as to what conduct rises to the level of "physical abuse" of a student and what conduct rises to the level of "mental abuse" of a student. We retained the appeal but this Court has not directly addressed

is attending classes. "A battery is a willful and unlawful use of force or violence upon the person of another." *Id.* § 642. Section 643 provides that force is not unlawful when committed by a teacher to lawfully restrain or correct a child if the action was necessitated by the child's misconduct or disobedience to a lawful command when the force or violence is "reasonable in manner and moderate in degree." In this case, the slaps were not protective nor corrective action, not necessitated by the child's misconduct, and were not reasonable in manner.

5. Exhibit C to the amended petition in error enumerates the following issues which were argued in the parties' briefs:

   1. The trial court's ruling that Hagen did not physically and/or mentally abuse a child is clearly erroneous and contrary to the weight of

the evidence. Indeed, several provisions in the Order regarding the incident on October 19, 2004 (namely, the context of Hagen's actions and the results thereof) are not supported by the record at all. Instead, they copy verbatim language from the proposed findings of fact submitted by opposing counsel which are, in fact, absent from the trial record.

   2. The trial court's ruling that Hagen did not physically and/or mentally abuse a child was erroneous as a matter of law.

   3. The trial court's decision to reinstate Hagen to his teaching position was erroneous as a matter of law.

   4. The trial court's decision to reinstate Hagen to his teaching position was clearly erroneous and contrary to the clear weight of the evidence.

   5. The district court erred in awarding Hagen his attorney fees.

these core legal questions. Under the undisputed basic facts in this case—a career special education teacher, with full knowledge of a sixth-grade student's mental and emotional challenges, verbally and physically confronted the student and slapped the student in the face twice, all because he, the teacher, was frustrated with the school superintendent— the teacher's conduct is both physical and mental abuse of the student.

¶ 20 In this jurisdiction, a teacher, like a parent, may control and discipline a child attending a public school. 70 O.S.2001, § 24-100.4(A). A teacher may restrain and correct a child with force, in the exercise of lawful authority, if the restraint or correction has been rendered necessary by the misconduct of the child or the child's refusal to obey a lawful command and the force used is reasonable in manner and moderate in degree. 21 O.S.2001, § 643(4). In this case, the thirty-minute confrontation and slapping incident did not occur because of the child's misconduct or refusal to obey a lawful command nor was it an attempt to discipline the child. It was an unleashing of the teacher's anger at the superintendent on this emotionally frail student, which the school district board considered to be child abuse and terminated this career special education teacher for physical and mental abuse.

¶ 21 In reversing the teacher dismissal, the district court order defined abuse as "harm or threatened harm to a child's health, safety or welfare by a person responsible for the same," citing a section of the Child Abuse Reporting and Prevention Act,[6] with an ex-ception that "a teacher may use ordinary force as discipline, including, but not limited to, switching, spanking or paddling," citing a criminal statute, 21 O.S.2001, § 844. It then found that the teacher did not intend to harm the child and that the school district did not carry its burden of proof.

¶ 22 In affirming the district court order, this Court's opinion reiterates the district court's findings. By doing so, the opinion implicitly injects a specific intent to harm requirement into the definition of child abuse in the Oklahoma Child Abuse Reporting and Prevention Act contrary to the plain terms of the statute and inconsistent with the criminal assault or battery statutes.[7] Were I writing for the Court, I would expressly engraft the pertinent provisions of the Child Abuse Reporting and Prevention Act[8] onto the pertinent provisions of the Teacher Due Process Act[9] and expressly reject the district court's irrelevant finding that the teacher had no intent to harm.

¶ 23 Reading the definition in the child abuse reporting statute into the teacher due process statute is legislatively mandated. The Legislature has directed that a statutory definition should be applied to the same word when it is used in another statute unless a contrary intention is expressed. 25 O.S.2001, § 2. The Teacher Due Process Act neither defines "abuse to a child" nor otherwise rejects the definition of "abuse" to a child in the Child Abuse Reporting and Prevention Act. Accordingly, the definition of "abuse" in the Child Abuse Reporting and Prevention Act should be applied to define "abuse" in

---

6. 10 O.S.2001, §§ 7101 et seq.

7. See 21 O.S.2001, §§ 641, 642.

8. Title 10, § 7102(B)(1) and (2) read:
  1. **"Abuse" means harm or threatened harm to a child's health, safety or welfare by a person responsible for the child's health, safety or welfare,** including sexual abuse and sexual exploitation;
  2. **"Harm** or threatened harm to a child's health or safety" **includes,** but is not limited to:
   a. **nonaccidental physical or mental injury,**
   b. sexual abuse,
   c. sexual exploitation,
   d. neglect,
   e. failure or omission to provide protection from harm or threatened harm, or
   f. abandonment. (Bold added.)

9. Title 70, § 6–101.22(A) reads:

   A. Subject to the provisions of the Teacher Due Process Act of 1990, a career teacher **may be dismissed** or not reemployed for:
   1. Willful neglect of duty;
   2. Repeated negligence in performance of duty;
   3. Mental or physical **abuse to a child;**
   4. Incompetency;
   5. Instructional ineffectiveness;
   6. Unsatisfactory teaching performance; or
   7. Any reason involving moral turpitude. (Bold added.)

the Teacher Due Process Act.[10] This definition, however, must take into account the authority vested in teachers to control, correct, restrain, or discipline a child pursuant to 70 O.S.2001, § 24–100.4(A) and 21 O.S. 2001, §§ 643(4) and 844.[11] But, it should not include a specific "intent to harm" element because the Legislature did not include an "intent to harm" element in the child abuse laws. The district court erred, as a matter of law, in using a lack of intent to harm as a basis for reversing the school district board's dismissal.

## III. Trial De Novo

¶ 24 I also disagree with the Court's construction of § 6–101.27(D) of the Teacher Due Process Act as placing "the final discretion with the trial judge" as to whether a teacher should be dismissed "even if the school board finds physical or mental abuse of a child." The trial de novo proceeding in § 6–101.27 does not invoke the plenary jurisdiction of the district court. Rather, § 6–101.27(D) restricts the jurisdiction of the district court "to determine de novo all issues of fact and law" and either sustain the school district board's dismissal or direct reinstatement.[12] In other words, the district court's jurisdiction can reach no further than to scrutinize whether the school district board's dismissal was warranted. This is the only application that can be made of § 6–101.27 within the framework of Article VI of the School Code.

¶ 25 The board of education of each school district is vested with the authority to enter into written employment contracts with teachers. 70 O.S.2001, § 6–101(A). Career teachers under contract may be dismissed for specified reasons. 70 O.S.2001, § 6–101.22(A). It is the local school district board that has the authority, in its discretion, to hire and to fire a career teacher in accordance with the Teacher Due Process Act.

¶ 26 The Teacher Due Process Act creates special proceedings for the protection of career teachers from arbitrary dismissal. 70 O.S.2001, § 6–101.26. The statute provides that a superintendent may recommend that a career teacher be dismissed and that before dismissal, the school district board must conduct a pretermination hearing. At the pretermination hearing, the superintendent must specify the statutory ground for the recommended dismissal and the underlying facts and explain the evidentiary support for the recommendation. *Id.* The teacher must be given a meaningful opportunity to respond and to present reasons why the superintendent's recommendation should not be approved. *Id.* The superintendent has the burden of proof by a preponderance of the evidence. *Id.* § 6–101.26(E).

¶ 27 When the school district board dismisses a career teacher, the teacher may challenge the dismissal in a trial de novo in the district court. 70 O.S.2001, § 6–101.27(A). At the trial de novo, "the standard of proof shall be by the preponderance of the evidence and the burden of proof shall be on the district superintendent or designee, as representative of the local school board of education, to establish de novo that the teacher's dismissal or nonreemployment is warranted." *Id.* § 6–101.27(D). The evidence and facts presented to the school district board in the pretermination hearing have no value in the trial de novo in the district court. The district court must hear the parties, admit the evidence and determine de novo all issues of fact and law that are "necessary to determine the adequacy of the dismissal" of the teacher. *Id.* The district court must prepare written findings of fact and conclusions of law, *id.*, and enter judgment either directing the school district

---

**10.** *See City of Muskogee v. Landry,* 1977 OK 127, ¶ 13, 567 P.2d 988, 990; *Sommer v. Sommer,* 1997 OK 123, ¶¶ 12, 13, 947 P.2d 512, 523 (Opala, J. dissenting).

**11.** *See Ashby v. Harris,* 1996 OK 70, 918 P.2d 744.

**12.** The Teacher Due Process Act was included in the 1989 education reform legislation commonly referred to as House Bill 1017. 1989 Okla.Sess. Laws, 1st Ex.Sess., ch.2, §§ 75–85. Just prior to enactment of the Teacher Due Process Act, *Short v. Kiamichi Area Vocational–Tech. School Dist. No. 7 of Choctaw County,* 1988 OK 89, 761 P.2d 472, found the tenured-teacher termination statute to be constitutionally flawed for failure to provide a pretermination hearing necessary to satisfy federal due process requirements.

board to reinstate the career teacher, *id.* § 6–101.27(D)(1), or sustaining the dismissal. *Id.* § 6–101.27(D)(2).

¶ 28 The Court's opinion reads the trial de novo provisions in § 6–101.27 as vesting the final discretionary authority to fire a career teacher with the district courts. I disagree. Such a reading implicates a separation of powers violation for placing control over executive branch employees in the judiciary.[13] The statutes must be read to avoid constitutional infringement if at all possible. I would assign the plain meaning to the statute. The statute provides for trial de novo so that the district court is not limited by the record made before the school district board; it requires the school district board to bring forth competent evidence to support the dismissal; and it places upon the district court the duty to determine the adequacy of the evidence supporting the dismissal, i.e., it requires the district court to determine if the school district board's dismissal is supported by a preponderance of the evidence.

¶ 29 Here, the district court acknowledged that the school district board dismissed the teacher for mental or physical abuse to a student, citing § 6–101.22, and defined abuse as harm or threatened harm to a child's health, safety or welfare by a person responsible for same, citing 10 O.S.2001, § 7102(B)(1), except ordinary force used as discipline, citing 21 O.S.2001, § 844. The teacher testified that he yelled at and slapped a sixth-grade special education student because he was angry with the school superintendent. This testimony proved that the teacher caused mental and physical abuse to a child. The teacher's testimony is evidentiary support for the dismissal. But, the district court went beyond the question of whether the preponderance of the evidence showed the teacher inflicted mental or physical abuse upon the child. The district court exceeded its statutory authority set out in 70 O.S.2001, § 6–101.27(D), and decided, in its discretion, that the teacher should not be dismissed for this incident of abuse of the child. That discretion to decide which teacher to hire or fire is vested only in the school district board and not in the district court.

This is the only reading of § 6–101.27(D) that is consistent with the school district board's duty to protect the health, safety and welfare of its students.

## IV. Conclusion

¶ 30 In conclusion, the school district board's dismissal of this special education teacher is both supported by the evidence and consistent with our child abuse laws. I cannot join in today's opinion affirming the district court's order that is contrary to both the evidence and the law.