2012 OK CIV APP 8

**Nazanin DERAKHSHAN,
Plaintiff/Appellee,**

v.

**Michael J. TIZZIO and Phillip G. Tizzio,
Defendants/Appellants.**

**No. 108,967.**

Court of Civil Appeals of Oklahoma,
Division No. 2.

Dec. 19, 2011.

Edward F. Saheb, Law Offices of Edward F. Saheb & Associates, Norman, Oklahoma, for Plaintiff/Appellee.

Eric J. Cavett, Foshee & Yaffe Law, Oklahoma City, Oklahoma, for Defendants/Appellants.

JANE P. WISEMAN, Judge.

¶ 1 Michael J. Tizzio (Michael) and Phillip G. Tizzio (Phillip)[1] appeal from the trial court's order finding that Nazanin Derakhshan (Plaintiff) met her burden in showing all elements of fraud, deceit, and false pretense thereby awarding her $23,000 in actual damages. Based on our review of the facts and applicable law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 According to Plaintiff's contentions set forth in the pretrial conference order, Michael informed her on January 2, 2009, that he would be taking a business trip to New York for the weekend.[2] Shortly thereafter, Michael contacted Plaintiff stating he was in jail and needed $23,000 for bail money and to hire an attorney. Michael further stated "he had no means of accessing his bank from New York, needed funds immediately, that his life was in danger and that upon release he would immediately refund the money." Michael asked Plaintiff to provide the money to his father, Phillip, in Oklahoma City so that it could be forwarded to Michael immediately. "[Michael] further represented that he would either refund the money immediately upon his return or in the alternate would transfer the Deed to the property he owned" in Oklahoma City.

¶ 3 Plaintiff contends she provided $23,000 to Phillip. Upon his return, Michael refused to meet with Plaintiff but mentioned in a phone conversation that he mailed her a cashier's check for $23,000. Plaintiff never received any money.

¶ 4 In the pretrial conference order, Plaintiff asserts that she subsequently learned Michael was not in New York in January 2009 and that he deceived her into providing him with money she would not otherwise have provided. Plaintiff then brought the present lawsuit to recover the $23,000 in which she asserted claims for fraud, deceit, and false pretense.[3] Defendants responded denying Plaintiff's allegations.

¶ 5 On August 23, 2010, the case proceeded to non-jury trial. At the conclusion of the trial, the trial court "found that the Plaintiff had met her burden of showing all elements of Fraud, Deceit and False Pretense[4] and awarded the Plaintiff a sum of $23,000.00" in actual damages against Defendants.

¶ 6 Defendants appeal.

## STANDARD OF REVIEW

■ ¶ 7 "In a non-jury trial the trial judge acts as the trier of fact and those findings are entitled to the same weight and consideration that would be given to a jury's verdict." *Hagen v. Independent Sch. Dist. No. I–004*, 2007 OK 19, ¶ 7, 157 P.3d 738, 740. "In an action at law the findings of fact by the trial court have the same force and effect as the verdict of a jury, and those findings will not be disturbed upon appeal where there is any evidence reasonably tending to support the

---

1. We note "Phillip" is spelled either "Phillip" or "Philip" throughout the record. For purposes of this Opinion, we will use "Phillip."

2. Plaintiff states in her second amended petition that the "parties were in a relationship whereby the Defendant Michael J. Tizzio[,] a married person[,] had entered into a relationship and promised to marry the Plaintiff for the purposes of defrauding her."

3. These are the claims identified in the pretrial conference order as opposed to the second

amended petition. Oklahoma District Court Rule 5(I), 12 O.S.2011, ch. 2, app. ("The contents of the pretrial order shall supersede the pleadings and govern the trial of the case unless departure therefrom is permitted by the Court to prevent manifest injustice.").

4. Defendants only appeal the fraud aspect of the trial court's ruling. Accordingly, we will only address this claim on appeal.

findings." *Id.* "Thus, on appeal, we must accept the findings of fact made by the trier of fact if those findings are supported by competent evidence." *Id.*

> "The credibility of the various witnesses and weight and value to be given to their testimony is for the jury or for the trial court on waiver of a jury, and conclusions there reached will not be disturbed on appeal, unless appearing clearly to be based upon caprice or to be without foundation."

*Hinds v. Johnston,* 2009 OK CIV APP 54, ¶ 5, 211 P.3d 236, 239 (quoting *Livingston v. Bonham,* 1957 OK 52, ¶ 13, 308 P.2d 657, 661).

## ANALYSIS

### I. Fraud

¶ 8 Defendants first argue the trial court erred in finding that all elements of fraud were shown by clear and convincing evidence. Actionable fraud, pursuant to Oklahoma case law, consists of the following elements: "[T]he defendant made a material representation that was false; that he knew when he made the representation that it was false; and that he made it with the intention that it should be acted upon by plaintiff, and that plaintiff acted in reliance upon it and thereby suffered detriment." *Silk v. Phillips Petroleum Co.,* 1988 OK 93, ¶ 12, 760 P.2d 174, 176–77; *see also* Oklahoma Uniform Jury Instructions—Civil, Number 18.1. Plaintiff is required to submit evidence of each element of fraud before the issue may properly be submitted to the trier of fact for consideration. *Silk,* 1988 OK 93 at ¶ 13, 760 P.2d at 177. "The absence of any one element of fraud is fatal to [Plaintiff's] claim." *Id.* at ¶ 37, 760 P.2d at 180.

¶ 9 As the Oklahoma Supreme Court stated:

> "The mere fact that fraud is claimed will not justify the submission of that issue unless facts are produced from which an *irresistible deduction of fraud reasonably arises.* Fraud may not be presumed by the jury from circumstances; it must arise as does any other issue of fact from a preponderance of all the evidence. Deceit,

fraud, and fraudulent intent arise from acts and conduct inharmonious with good faith and must emanate from clear and convincing proof."

*Id.* at ¶ 13, 760 P.2d at 177 (quoting *Johnson v. Caldwell,* 1937 OK 327, ¶ 15, 71 P.2d 620, 623).

¶ 10 Even though fraud may never be presumed but must be proven by clear and convincing evidence, it may be established by circumstantial evidence:

> "Fraud may be proved by circumstantial evidence. Indeed, from its nature it is difficult to prove it by direct evidence, and it is seldom that it can be so proved. Hence it is more often shown by circumstances than in any other way. It is impossible, however, to enumerate the facts from which it may be inferred. Each case must depend on its own facts, and all the facts and circumstances connected with and surrounding the transaction are to be considered together in determining whether it was fraudulent. Facts of trifling importance when considered separately, or slight circumstances trivial and inconclusive in themselves, may afford clear evidence of fraud when considered in connection with each other. It has been said that in most cases fraud can be made out only by a concatenation of circumstances, many of which in themselves amount to very little, but in connection with others made a strong case."

*Austin v. Wilkerson, Inc.,* 1974 OK 23, ¶ 17, 519 P.2d 899, 904–05 (quoting *Griffith v. Scott,* 1927 OK 361, ¶ 18, 261 P. 371, 376). "[F]raud can be predicated upon a promise to do a thing in the future when the intent of the promisor is otherwise." *Citation Co. Realtors, Inc. v. Lyon,* 1980 OK 68, ¶ 8, 610 P.2d 788, 790. "The gist of the rule is not the breach of promise but the fraudulent intent of the promisor *at the time the pledge is made not to perform the promise so made* and thereby deceive the promisee." *Id.* (emphasis added).

¶ 11 Plaintiff testified Michael told her in January 2009 that he was going to New York over the weekend to deal with a family business dispute. Plaintiff testified she received a phone call from Phillip that

weekend. According to Plaintiff, Phillip told her Michael had been arrested for criminal wrongdoing in New York for hitting a family member with a baseball bat, putting him in a coma, and needed $23,000 to pay for a lawyer and bond fees. Phillip promised her Michael would pay her back once he returned to Oklahoma from New York. Plaintiff testified she also received a text from Michael begging her to give his father the money for his upcoming court date.

¶ 12 The next day, Plaintiff withdrew money from her money market account and gave Phillip eleven $1,000 money orders made out in blank to use for Michael. Plaintiff also gave Phillip cash of $4,000 from her savings account and $8,000 from her mother's account. Before she handed over the $12,000 in cash to Phillip, Plaintiff required him to sign a receipt for that amount. Plaintiff testified that after she handed over the money, she received a text from Michael letting her know he was out of jail and would pay her back as soon as he was back in town. He also said if he did not have enough cash, he would give her his house because it was paid off.

¶ 13 According to Plaintiff, she later learned Michael never went to New York but was actually in town in Oklahoma City the whole time. Plaintiff testified she spoke with Michael's ex-wife, Kasey, who told her Michael was in town that weekend and had picked up his daughter. Plaintiff also testified she told his ex-wife that she tried to look up Michael's case in New York but could not find anything.

¶ 14 After multiple failed attempts to recover her money from Michael and Phillip and Michael's unfulfilled promises to pay her back, Plaintiff inquired about the house he had said he would give her. Plaintiff testified Michael then informed her that she would not be able to get the house because it had been deeded to his mother. Evidence shows this transaction occurred in November 2008.

¶ 15 Susan Porterfield, Michael's aunt, testified that on January 2nd or 3rd, 2009, Plaintiff called her believing Michael was in trouble in New York. Susan testified Plaintiff told her she gave money to Phillip for Michael because Michael was in jail and needed the money to get out.

¶ 16 Phillip testified Plaintiff believed Michael was in legal trouble in New York and needed money. Phillip testified he took Plaintiff's $11,000 in money orders, immediately cashed them, and gave the money to Michael. Phillip denies taking the $12,000 in cash from Plaintiff claiming that it is not his signature on the receipt.

¶ 17 Michael testified he called Plaintiff in January 2009 and told her he needed money because he was in financial trouble, but he denied he told her he needed money because he was in jail in New York. Michael further testified he does not remember sending the following text: "[P]lease give my dad the money fast[.] [P]lease hurry[.][I]'m so scared[.][M]y court date is [F]riday and [I] really need to pay the lawyer or he won[']t come to court[.]" Michael admits receiving $11,000 in cash from his father. Although Michael also admits there is a text from his number to Plaintiff admitting owing her $23,000, Michael states he did not write the text but someone else could have written it. Michael testified that although he planned on repaying Plaintiff the $11,000, he never made any efforts to do so.

¶ 18 The evidence establishes that Defendants knowingly made false material representations to Plaintiff that Michael was in New York in January 2009 and needed $23,000 to pay legal expenses related to his arrest and further that they intended for Plaintiff to provide Michael $23,000 immediately to pay these expenses. Defendants misled Plaintiff into believing that Michael needed $23,000 because he was in desperate circumstances and that she would be repaid immediately. Plaintiff relied on what she had been told by Defendants and did so to her detriment. We conclude the trial court correctly determined that Plaintiff proved the existence of fraud by clear and convincing evidence.

## II.  Reliance/Waiver of Fraud

■ ¶ 19 Defendants also contend Plaintiff "waived her fraud claim after she found out that Michael Tizzio was not in jail in New

York and then proceeded to give Philip Tizzio money." Defendants rely on Oklahoma Uniform Jury Instructions—Civil, Number 18.11, which provides as follows:

[Defendant] is not liable to [Plaintiff] on [his/her] claim of deceit if the affirmative defense of waiver is established. This defense is established if you find both of the following:

1. After [Plaintiff] began the course of action contemplated by the parties to the transaction, but before that course of action was completed, [Plaintiff] learned what the actual facts were; and

2. Nonetheless, with full knowledge of the actual facts, [Plaintiff] thereafter continued the course of action contemplated by the transaction, when a reasonably careful person under the same or similar circumstances would not have done so.

The "Notes on Use" section for this instruction further provides that "[i]f the plaintiff learned of the actual facts before taking any action in reliance, for example, entering into a contract with another person, then the plaintiff's claim must fail, not because of waiver but because of failure to meet the burden of proof on the issue of reliance."

¶ 20 Defendants argue the following testimony from Plaintiff establishes that waiver occurred and/or that Plaintiff has not met the element of reliance:

Q. Okay. Did you also get a text message from Mike saying, "Please give my dad the money fast. Please hurry up. I'm so scared. My court date is Friday, and I really need to pay the lawyer or he won't come to court"?

A. Yes, I have.

Q. So Michael also asked you for the same thing; right?

A. Yes. At the time, I stayed the night at my best friend's house, and she was there with me when he was sending me the text messages. And he stated that-he stated that he was texting me while he was in court because his phone was with him.

. . . .

Q. Okay. But you—on the taped conversation, you state to Kasey that you learned—you went and you found out that there was no case against Michael and then you called up Philip, and then subsequently you gave him the money?

A. I had given him the money—yes, I told her I looked it up and I couldn't find anything in New York.

Defendants argue that Plaintiff "is a smart, sophisticated businesswoman with a degree in fashion marketing and another degree in legal studies." Defendants conclude that because Plaintiff attempted to look up Michael's case in New York before handing over money to Phillip and she testified that Michael was texting her from court, "[a] reasonably careful person under the same or similar circumstances would not have given $23,000 to someone, especially after finding out the truth that the person was not in jail."

¶ 21 In both their petition in error and in their appellate brief, Defendants represent to this Court that Plaintiff "found out that Michael Tizzio was not in jail," that Plaintiff "knew that Michael was not in jail," that she "learned the truth," that she "knew the truth" and still gave $23,000 to Phillip. This, Defendants argue, defeats Plaintiff's assertion that she relied on any false representations.

¶ 22 Plaintiff states that she "clearly testified that she had already paid the money before attempting to look up whether there was anything pending in New York" and that Defendants misinterpret her testimony. Plaintiff asserts there is no record support for any argument that she proceeded with full knowledge of the actual facts. She states in her appellate brief:

There is nothing conclusive about a student/hair stylist with a self proclaimed insight into legal doctrines gained while earning a Fashion Marketing degree, that indicates her failure to find anything would have led her to believe that Michael was not in trouble in New York in spite of her failing to find anything on him.

Plaintiff argues this is true because "[g]iven the number of Districts, and different forums in every State there is absolutely no way that anyone with any certainty [could ascertain] that Michael was not in fact incarcerated in New York no matter how extensive the

search." The trial court agreed with Plaintiff finding as follows:

> I think what the testimony was by the plaintiff in this case was she attempted to see if she could find anything in New York relating to the defendant. And I think anyone would be hardpressed to believe that you can find anything in New York on a defendant by looking at the computer.... Reliance is not an issue. She said she tried to check but couldn't find out anything and relied on what she was told. And I think that's a fair statement of the evidence in this case.

From our review of the record, there is no evidence that Plaintiff actually knew that Michael was not incarcerated but loaned the money anyway, and without this critical evidentiary basis, there can be no waiver by Plaintiff of her fraud claim. Oklahoma Uniform Jury Instructions—Civil, No. 18.11. We agree with the trial court that Plaintiff relied on what Defendants told her and sustained $23,000 in damages as a result. We conclude that Plaintiff met the burden of showing reliance on Defendants' false representations to her detriment and that Defendants failed to prove any waiver by Plaintiff of her claims.

## CONCLUSION

¶ 23 After review of the record and relevant law, we agree with the trial court's judgment finding that Plaintiff met her burden of proof as to the required elements of fraud, and we affirm the award of $23,000 in actual damages. Plaintiff's request in her appellate brief for appeal-related costs and fees is denied for failure to comply with Oklahoma Supreme Court Rule 1.14.

¶ 24 **AFFIRMED.**

FISCHER, V.C.J., and BARNES, P.J., concur.